# NOT FOR PUBLICATION

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-50 C/W 13-51

## SUCCESSION OF GUSTAVIA LEDET

## AND

## SUCCESSION OF MARY LEDET

\*\*\*\*\*\*\*\*\*
## APPEAL FROM THE
## SIXTEENTH JUDICIAL DISTRICT COURT
## PARISH OF ST. MARTIN, DOCKET NO. 14571 C/W 14636
## HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE

\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Bart J. Hebert
Boyer, Hebert, Abels & Angelle, LLC
401 East Mills Avenue
Breaux Bridge, LA 70517
(337) 332-0616
**ATTORNEY FOR APPELLANT**
   Gloria Amos

Randy M. Guidry
Durio, McGoffin, Stagg & Ackerman
220 Heymann Boulevard
P.O. Box 51308
Lafayette, LA 70505-1308
(337) 233-0300
**ATTORNEY FOR APPELLEE**
   Vincent Alexander

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Mary Gustavia Ledet passed away on April 14, 2009. She was never married and had no children. The evidence established that in the years prior to her death, Vincent Alexander, Mary's younger brother, handled her affairs. The trial court noted the two were very close. Vincent was beneficiary on all of Mary's insurance policies. Vincent also possessed Power of Attorney to handle her affairs.

Toward the end of her life, Mary suffered from poor health. She spent several months in the hospital shortly before her death, and it was apparent she would not be able to live without full-time assistance. Mary was adamantly opposed to living in a nursing home. Vincent began the process of securing long-term, in-home personal care for her through the Department of Health and Hospitals. Vincent received approval for the long-term, in-home personal care services on June 25, 2008.

Mary resisted the in-home personal care services because she did not want a stranger in her home. In an attempt to make Mary comfortable, Vincent attempted to secure long-term, in-home personal care from someone that Mary knew. Vincent secured the services of Lois Smith, who had cared for Mary on previous occasions. However, before Lois could begin, Mary was hospitalized at St. Martin Hospital.

While at St. Martin Hospital for nearly three months, Mary's nurse toward the end of her stay was Latarya Alexander. According to Latarya, when it was time for Mary to be discharged from the hospital, Mary asked her to come take care of her at home. Latarya asked her mother, Gloria Amos, to find someone who could also help in taking care of Mary. Gloria Amos was a home healthcare worker for the elderly. Gloria made arrangements for Latarya to take care of Mary

during the day, and for Latarya's sister, Crystal Amos (also Gloria Amos' daughter), to take care of Mary at night.

Latarya testified Mary told her she had no money to pay for her care, but would leave Latarya the lot next to Mary's residence when she died for taking care of her. Latarya also stated Mary agreed to give the house to Crystal when she died. Latarya agreed to stay in the residence during the day and her sister, Crystal would stay at night. Latarya testified she quit working for St. Martin Hospital in December 2008, to begin caring for Mary at her home. From this point until her death, Mary was cared for by Latarya, Crystal and Gloria Amos.

Shortly after returning home and being under the care of Gloria and her daughters, Mary executed a Power of Attorney in favor of Gloria on December 17, 2008. The following day, the Power of Attorney given by Mary to Vincent was revoked.

Shortly after that, Gloria stated that Mary requested she contact a notary public to have a will prepared. A Last Will and Testament was prepared in which Mary bequeathed all her property to Gloria. The will also provided that Gloria "grant unto her daughter, Crystal Yvonne Amos, the usufruct of my family home for as long as she needs a place to live" and provided that Gloria was to be appointed Executor of the estate. Gloria drove Mary to the office of Norman Landry on January 12, 2009, to sign the Last Will and Testament. The trial court noted the condition for the transfer to Gloria Amos, that Mary not be placed in a nursing home, was not included in the will.

On March 6, 2009, Vincent, concerned about his sister, made a formal complaint to the State Elderly Affairs Office. An investigator (Howard Alexander) visited Mary's home to see if there was any basis for the complaint that Gloria and her daughters were taking advantage of Mary. Gloria later acknowledged she lied to the investigator when she told him Mary did not have a will. After contacting

3

Norman Landry and discovering the existence of the "Last Will and Testament of Mary Ledet" signed on January 9, 2009, the investigator visited Mary with the will. Gloria acknowledged that when the investigator read the Will to Mary, she was emphatic in stating the will needed to include the condition "only if not put in a nursing home." The investigator told Gloria the Will needed to be corrected to include that condition. Eventually, Gloria contacted Norman Landry to alter the Will to include such language. However, the altered Will was not signed by Mary nor was it notarized.

Gloria contacted Norman Landry and told him to prepare an Act of Donation of Mary's immovable property to Gloria. On March 31, 2009, a Donation Inter Vivos from Mary to Gloria was prepared and executed. The document did not recite the condition that Mary not be placed in a nursing home.

On April 14, 2009, Mary passed away. On May 27, 2009, Gloria filed a Petition of Appointment of Administratrix for the Succession of Gustavia Ledet. The petition alleged that Mary died intestate on April 14, 2009. Gloria stated Mary left no children and that she desired to be appointed Administratrix. Gloria asserted, despite the Inter Vivos Donation of March 31, 2009, that Mary made no donations or transfers of property for an inadequate consideration within one year prior to her death, nor did she transfer any property prior to that time in contemplation of death or in avoidance of taxes.

On October 25, 2009, Vincent filed an "Answer to the Petition of Appointment of Administratrix, Motion for Removal of Administratrix, Appointment of New Administrator to Invalidate Transfer and for Accounting." Vincent stated on the death of Mary Gustavia Ledet, she was survived by the following siblings: Vincent Alexander, Livingston Alexander, John H. Alexander, Janet Alexander, Nelson Wiltz and Fene Lownnie Alexander. Vincent maintained these siblings were the lawful heirs of decedent.

4

Vincent contended Gloria did not meet the requirements of La.Code Civ.P. art. 3097(B), and is thus not qualified to be appointed Administratrix. He also alleged Gloria undervalued the immovable property of decedent. Gloria asserted the property had a value of $10,000.00, whereas Vincent assigned it a value of $100,000.00. Vincent further contended the Detailed Descriptive List provided by Gloria was in error and contained several misrepresentations. Vincent asserted the Affidavit of Death and Heirship filed by Gloria was fraudulent as was the Donation Inter Vivos and all of Mary's property should be placed into her succession. Lastly, Vincent asked for an accounting from Gloria for all acts she performed as Administratrix.

Shortly thereafter, Vincent filed a Petition to Open and Administer Testate Succession and For Appointment as Administrator in the Succession of Mary Ledet. Vincent asserted that Mary died with a Last Will and Testament, but that the Last Will and Testament was defective. He argues Mary had a prior will which should be made executory. The petition lists the siblings of Mary and contends it is necessary to open and administer Mary's succession for the benefit of these heirs and any potential creditors. Vincent sought to be appointed Administrator of Mary's succession.

The two cases were consolidated for trial. The matter was heard on January 31, 2012 and February 6, 2012. Several witnesses testified and both parties filed post-trial memoranda. After taking the matter under advisement, the trial court issued lengthy written reasons for judgment.

It found the Last Will and Testament of Mary Ledet (signed on January 12, 2009) and the Donation Inter Vivos null and void for failure to include the primary cause for Mary bequeathing all of her property to Gloria, i.e., that she not be placed in a nursing home. The trial court further found the Will and Donation null and void because it was proven by clear and convincing evidence that Gloria

5

committed acts of fraud and exhibited undue influence over Mary. The trial court also found Gloria did not meet any of the requirements of La.Code Civ.P. art. 3097(B) to be appointed Administratrix. Lastly, the trial court noted it had not been established whether Mary executed a valid and enforceable prior will. Thus, the trial court deferred ruling on Vincent's request to be named Adminstrator.

Gloria has appealed the trial court's judgment, contending it was error to find the Will and Donation Inter Vivos null and void. She also contends the trial court erred in allowing and relying on hearsay evidence. Lastly, Gloria argues the trial court erred in finding she failed to sustain her burden of proving she was related to Mary by blood or affinity.

## ANALYSIS

### I. *Nullity of the Will and Donation*

### A. *Lack of Cause*

The trial court found Mary entered into a transaction with Gloria, conditioned on her daughters caring for Mary in her residence until she died. In exchange for this consideration, Mary would leave everything she owned to Gloria. We agree with the trial court's factual finding and the record amply supports that the above was the cause for the Last Will and Testament and Donation Inter Vivos entered into by Mary for the benefit of Gloria.

Louisiana Civil Code Article 1966 provides "[a]n obligation cannot exist without a lawful cause." Louisiana Civil Code Article 1967 explains that "[c]ause is why a party obligates himself."

It is clear the Will, signed by Mary on Januray 12, 2009, and the Donation Inter Vivos, signed on March 31, 2009, did not contain the condition that Mary not be placed into a nursing home. Norman Landry testified that he was later contacted by Gloria to add the phrase "only if not put in a nursing home" to the original January 12, 2009 Will. No new Will or a Codicil to the Will was

6

prepared. There were no witnesses to the addition of the new language, Mary did not sign the addition to the original Will, nor was the addition to the original Will notarized. Thus, the trial court found the addition of this language had no legal consequence.

We find the trial court did not err in finding it was proven by clear and convincing evidence that the Last Will and Testament and Donation Inter Vivos did not contain the condition that Mary not be placed into a nursing home. Under the law, the trial court did not err in finding the Will and Donation are null and void because they did not contain the lawful cause.

We find unpersuasive, Gloria's arguments that her obligations under their oral agreement was satisfied because Mary was never placed in a nursing home. The failure to include the obligation in the documents was fatal.

B.    *Fraud and Undue Influence.*

Gloria also argues the trial court erred in finding she induced Mary, by fraud and undue influence, to enter into the Will and Donation. The trial court found Gloria exercised dominion over Mary and influenced her actions. The trial court delineated in great detail Gloria's "complete lack of credibility and believability throughout her testimony." On one specific occasion, Gloria was caught lying to the trial court. The following colloquy occurred between the trial court and Gloria:

> THE COURT:    . . . Let me ask you something. You said you went and talked to Vincent Alexander --
>
> THE WITNESS:    Yes, sir.
>
> THE COURT:    Did you tell him the arrangement was that you were going to get the house?
>
> THE WITNESS:    Yes, sir. She told him. Yes, sir. Yes, I did.
>
> THE COURT:    No. You said you went and talked to Vincent.
>
> THE WITNESS:    Yes, sir.

7

THE COURT:   And you told Vincent the arrangements that you and your daughters had with Mary.

THE WITNESS:   Yes, sir.

THE COURT:   And my question is:  Did you tell Mr. Vincent that you and your daughters were going to get the house in exchange for taking care of her?

THE WITNESS:   The first time we spoke, Vincent and I, yes, sir. He was aware.

THE COURT:   No, I didn't ask you if he was aware.  I asked you if you told him.

THE WITNESS:   Yes, sir.  Yes, sir, I did tell him.

After this exchange, a recording between Gloria and Vincent was played, wherein Gloria specifically tells Vincent the only thing Mary had given her was Power of Attorney and they were not getting anything in exchange for taking care of Mary.  It was established this conversation occurred approximately one month after Gloria had taken Mary to sign the Will leaving Gloria all of her property.

The trial court also noted that Gloria informed the Investigator for Elderly Affairs for the St. Martin Sheriff that Mary did not have a Will, when just weeks earlier Gloria had taken Mary to sign the Will leaving all of Mary's property to her.  Gloria also did not mention Mary's Will at a meeting at Genesis Behavioral Hospital, which was compelled by Vincent under his Power of Attorney in part to determine whether Gloria and her daughters were taking advantage of Mary.  The trial court concluded this omission on Gloria's part "sought to deceive those looking after the best interest of Mary Ledet in not being truthful and telling what the actual agreements were with Mary Ledet."

The trial court also noted Gloria signed under oath that Mary "made no donation or transfer of property for an inadequate consideration within one year prior to her death."  This despite the fact that Gloria knew the Donation Inter Vivos was prepared and signed by Mary only two weeks prior to her death.

8

Louisiana Civil Code Article 1953 defines fraud as follows:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

We agree with the trial court the record established by clear and convincing evidence that the actions of Gloria were fraudulent. She engaged in "non-disclosures where disclosure was required, actual lying concerning actions she had taken to obtain all the property of Mary Ledet, and her misrepresentations concerning her relationship with Mary Ledet."

Louisiana Civil Code Article 1479 explains to establish undue influence, a litigant must prove the donation "is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor." The trial court's reasons set forth an obvious example of undue influence in this case:

> It did not take Gloria Amos very long after getting Mary Ledet to Mary's residence in December of 2008, to take over the decisions and life of Mary Ledet. As early as December 17, 2008, Gloria Amos had a Power of Attorney prepared giving to Gloria Amos power of attorney over Mary Ledet's affairs. The next day, December 18, 2008, Gloria Amos arranged for the revocation of the Power of Attorney previously held by Vincent Alexander. The very next month, on January 12, 2009, Gloria Amos had prepared the Last Will and Testament of Mary Ledet leaving everything to Gloria Amos, however, not including Mary Ledet's primary requirement of "only if not put in a nursing home". Subsequently, not being satisfied with the Last Will and Testament of Mary Ledet leaving everything to Gloria Amos, Gloria Amos directed the Notary Public to prepare a Donation Inter Vivos from Mary Ledet to Gloria Amos, which was executed on March 31, 2009, giving in an Inter Vivos Donation everything which Mary Ledet owned to Gloria Amos without any conditions therein established.
> . . . .
> This Court concludes from all of the above that Gloria Amos, by fraud, actual and by silence, and by manipulation and lying, exercised psychological domination over Mary Ledet to the extent that Mary Ledet could not help but do what Gloria Amos wished. This is evidenced throughout the case and throughout the testimony and circumstances cited by this Court. This Court is convinced by clear and convincing evidence that Mary Ledet was controlled by the fraud, both actual and by silence, by the lying and manipulation by

Gloria Amos to such an extent that Gloria Amos demonized Vincent Alexander and also to the extent that Gloria Amos got Mary Ledet to do whatever Gloria Amos desired even though Mary Ledet did not desire the same thing.

We find no error in the trial court's determination that the type of behavior exhibited by Gloria constitutes undue influence sufficient to nullify the Will and Donation.

## II.   Trial Court's Reliance on Hearsay

Gloria argued the trial court committed legal error in allowing and relying on hearsay evidence in rendering its decision. At issue were business records from the State of Louisiana, Governor's Office of Elderly Affairs, Elderly Protective Services concerning the investigation that office made in connection with Gloria's treatment of Mary. The trial court stated it was his understanding that this office was an investigatory body and any factual conclusions in the report were inadmissible, but the facts contained in the records were admissible. Specifically, Gloria objected to statements listed in the report that Mary allegedly told to Rena Derouselle which were read into the record. Ms. Derouselle was not called as a witness, thus Gloria could not cross-examine her; and, she argues this was prejudicial to her. The trial court specifically stated it would not consider any hearsay evidence. A review of the trial court's lengthy written reasons shows no mention of Ms. Desourelle. Moreover, the trial court listed numerous examples of deceptive acts by Gloria. As such, Gloria's contention that the trial court relied "heavily" on hearsay testimony from Ms. Derouselle is simply not supported by the record. This assignment of error lacks merit.

## III.   Proof of Affinity

Lastly, Gloria argues the trial court erred in finding she failed to sustain her burden of proving she was related to Mary by blood or affinity. The trial court noted that the issue of whether Gloria was related to Mary is only relevant because

10

it changes the burden of proving fraud, duress, or undue influence from a preponderance of the evidence (if not related) to clear and convincing evidence (if related). *See* La.Civ.Code art. 1483. The trial court addressed this issue as follows:

> The evidence does not satisfy the Court that Gloria Amos and Mary Ledet were related by affinity. There is no documentary evidence whatsoever and the testimony of the various witnesses is totally contradictory to the other side's testimony. The Court does not find that Gloria Amos has sustained the burden of proof that she was related to Mary Ledet by affinity. However, the Court finds that this is inconsequential in this matter because the Court's holdings herein are based upon clear and convincing evidence, not merely preponderance of the evidence. Even if Gloria Amos had proved affinity with Mary Ledet, this Court concludes the clear and convincing evidence is of undue influence . . . .

There is no error in the trial court's ruling on this issue.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, Gloria Amos.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules–Courts of Appeal, Rule 2-16.3.